**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

**Fifth Third Bank**
600 Superior Avenue East,
Cleveland, Ohio 44114,

Plaintiff,

vs.

**New Dimension Fund, LLC**
2222 Michelson Drive, Suite 4500
Irvine, California 92612

also serve:

c/o California Service Company
Agent for Service of Process for New Dimension Fund, LLC
2730 Gateway Oaks Drive, Suite 100
Sacramento, California 95833,

and

**Trinity World Holdings, LLC**
711 South Carson Street, Suite 4
Carson City, Nevada 89701

also serve:

c/o Lisa Remmers
Agent for Service of Process for Trinity World Holdings, LLC
496 Sloan Drive
Corona, California 92879,

and

**Ananias World Fund, LLC**
80 Liberty Ship Way, Suite 7
Sausalito, California 94965

CASE NO. 3:11-CV-02427

JUDGE

**COMPLAINT**

Jury Demand Endorsed Hereon

also serve:

c/o California Service Company
Agent for Service of Process for
Ananias World Fund, LLC
2730 gateway Oaks Drive, Suite 100
Sacramento, California 95833,

and

**Lonny Remmers**
496 Sloan Drive
Corona, California 92879,

and

**Lisa Remmers**
496 Sloan Drive
Corona, California 92879

and

**Trace Venture Associates, LLC**
c/o Mark D. Aller, Statutory Agent
497 Townsend Street
Birmingham, Michigan 48009,

and

**Mark D. Aller**
497 Townsend Street
Birmingham, Michigan 48009,

and

**Mark Wittenmyer**
8970 Oak Valley Road
Holland, OH 43528,

Defendants.

Plaintiff Fifth Third Bank ("**Fifth Third**"), by counsel, states the following as its Complaint.

## INTRODUCTION

1. This action is brought to remedy an intentionally fraudulent scheme that defrauded Dillin Investments, LLC, Plaintiff's assignor, out of millions of dollars. The Defendants perpetrated this scheme by establishing several fraudulent entities, none of which had any value or assets, and subsequently held them out to Plaintiff's assignor as a legitimate multi-faceted investment vehicle by which it could generate profits. As detailed herein, the Defendants established a fraudulent entity—the "New Dimension Fund"—that was owned, in part, by or through the principal of another fraudulent entity—"Trinity World Holdings"—and defrauded Dillin Investments, LLC out of $2 million in the form of a promissory note secured by a fictional interest in a third fraudulent entity—the "Ananias World Fund."

## THE PARTIES

2. Fifth Third is an Ohio banking corporation with a place of business indicated in the caption. Fifth Third brings this suit as assignee of Dillin Investments, LLC and Larry B. Dillin, as set forth herein, and is the real party in interest.

3. Defendant New Dimension Fund, LLC ("**New Dimension**") is a Delaware Limited Liability Company with a principal place of business and statutory agent as stated in the caption. Upon information and belief, the members of New Dimension consist of Defendants TWH, Wittenmyer, and Trace Venture Associates, LLC ("**TVA**") by or through Defendant Aller.

4. Defendant Trinity World Holdings, LLC ("**TWH**") is a Nevada Limited Liability Company with a principal place of business and statutory agent as stated in the caption. Upon information and belief, the members of TWH consist of Defendants

Lonny Remmers and/or Lisa Remmers. As of the date of this Complaint, TWH's status as a Nevada Limited Liability Company has been revoked. Upon information and belief TWH is a member and/or has a beneficial interest in Defendant New Dimension and played a key role in the fraudulent scheme detailed herein.

5. Upon information and belief, Defendant Ananias World Fund, LLC ("**Ananias**") is a Delaware Limited Liability Company with a principal place of business and statutory agent as stated in the caption. Upon information and belief, Ananias was the brainchild of Defendant Lonny Remmers, and has never been a going concern or a working investment vehicle.

6. Upon information and belief, Defendant Lonny Remmers is a natural person residing in Riverside County, California, with a last known address as indicated on the caption. Upon information and belief, Lonny Remmers founded TWH, Ananias and, with Defendants Aller and Wittenmyer, founded Defendant New Dimension in order to conduct the fraudulent scheme detailed herein.

7. Upon information and belief, Defendant Lisa Remmers is a natural person residing in Riverside County, California, with a last known address as indicated on the caption. Upon information and belief, Defendant Lisa Remmers is the wife of Defendant Lonny Remmers and is the managing member of Defendant TWH.

8. Upon information and belief, Defendant TVA is a Michigan Limited Liability Company with a statutory agent as stated in the above caption. Upon information and belief, Defendant TVA is managed by Defendant Aller and is a member and/or has a beneficial interest in Defendant New Dimension and played a key role in the fraudulent scheme detailed herein.

9. Upon information and belief, Defendant Mark Aller is a natural person residing in Oakland County, Michigan, with a last known address as indicated on the caption. Upon information and belief Defendant Aller manages Defendant TVA and played a key role in the fraudulent scheme detailed herein.

10. Upon information and belief, Defendant Mark Wittenmyer is a natural person residing in Lucas County, Ohio, with a last known address as indicated on the caption. Upon information and belief Defendant Wittenmyer is a member and/or has a beneficial interest in Defendant New Dimension and played a key role in the fraudulent scheme detailed herein.

## RELEVANT NON-PARTIES

11. Dillin Investments, LLC ("**Dillin Investments**") is an Ohio Limited Liability Company owned by Larry B. Dillin. Dillin and Dillin Investments were the victims of the fraudulent scheme detailed herein. As more fully set forth herein, Dillin and Dillin Investments assigned to Fifth Third all claims detailed herein as well as any entitlement to relief therefrom. All references below to, and allegations on behalf of, Plaintiff shall be deemed to include Plaintiff, as assignee of Dillin Investments and Larry Dillin.

## JURISDICTION AND VENUE

12. This Court has subject matter jurisdiction over this dispute pursuant to 28 U.S.C. §§ 1331 and 1367, because: (i) this action arises, in part, under the laws of the United States; and (ii) this Court has supplemental jurisdiction over any state-law claims in this action as those claims are related to, and form part of the same case or controversy with, the claims for which this Court possesses original jurisdiction.

13. This Court has personal jurisdiction over Defendants pursuant to Rule 4.3 of the Ohio Rules of Civil Procedure and pursuant to Ohio Rev. Code §§ 2307.382(1), (2), (3), (4), (6), (7) and/or (8). Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims asserted herein occurred within the Northern District of Ohio.

## FACTS COMMON TO ALL COUNTS

### A. Defendants Entice Dillin, A Financially Struggling Real Estate Developer, With The New Dimension Investment "Opportunity"

14. Dillin Investments is a company, owned and operated by Larry Dillin, that specializes in commercial real estate development.

15. By 2009, Dillin Investments and Mr. Dillin were experiencing financial difficulties due to poor economic conditions. In particular, they were struggling with obtaining funding to finance their ongoing real estate projects.

16. Dillin was actively engaged in soliciting equity investors to create a $50,000,000 real estate investment fund to support its real estate projects. Dallas Paul, an employee of an affiliate of Dillin Investments, and Dillin became aware of a potential real estate investor—Wittenmyer—through Gus Nikolaides, a local restaurant owner. Paul approached Wittenmyer about investing in Dillin's real estate project.

17. In or around Spring 2009, Wittenmyer approached Paul with an investment opportunity. Paul, aware of Dillin Investments' financial condition, agreed to communicate the opportunity to Robert Voelker, a then-business partner of Dillin. Wittenmyer and Paul met with Voelker in Texas where Wittenmyer told Voelker about New Dimension.

18. In or around May 2009, Wittenmyer told Voelker about New Dimension, an investment vehicle purportedly owned by Lonny Remmers, Aller, and Wittenmyer. Wittenmyer described the New Dimension investment strategy as focusing on amassing high net-worth assets that could be monetized and invested in various projects and transactions that would, directly or indirectly, create income.

19. According to Wittenmyer, Lonny Remmers conceived of New Dimension, Aller was in charge of the accounting, book-keeping and compliance, and Wittenmyer's role was to attract new investors.

20. Wittenmyer advised Voelker and Paul that New Dimension was still in its beginning stages and required about $2,000,000 in extra start-up money to pay all the various costs and fees associated with starting the fund before it could begin operations. Voelker decided not to invest, but Paul informed Dillin of the $2,000,000 extra start-up money required for New Dimension. As a result, Dillin approached Wittenmyer to discuss a loan of $2,000,000 to New Dimension, believing that this would allow it to begin operations.

21. Wittenmyer proposed that the transaction be characterized as a one-year loan for $2 million dollars, payable with interest, and that Dillin would also receive a guaranteed "profit participation" payment.

22. Wittenmyer informed Dillin that New Dimension Fund, in a relatively short period of time, would provide considerable cash flow, allowing Wittenmyer to invest his profits into a joint real estate fund to be managed by Dillin.

**B. <u>The Defendants Fraudulently Misrepresent The Financial Wherewithal And Legitimacy of New Dimension, TWH, and Ananias To Induce Dillin To Invest $2 Million Dollars, Then Misrepresent How The Money Was To Be Spent</u>**

23. In and around July 2009, having been enticed by Wittenmyer's various representations, Dillin began to further investigate the alleged opportunity and initiated serious negotiations to make the $2 million cash investment (the "**Dillin Funds**") that Wittenmyer represented was required to launch New Dimension.

24. In connection with those negotiations, Dillin and Dillin Investments requested information regarding New Dimension, TWH and Ananias, in an attempt to assess whether to invest the requested Dillin Funds.

25. In response to requests for information, Defendants made several representations and omissions designed to induce Dillin and Dillin Investments to invest the requested Dillin Funds as detailed below. These representations and omissions were fraudulent.

a. <u>The Financial Strength of New Dimension</u>

26. Defendants represented that the proposed transaction was safe because New Dimension was backed by the financial strength and security of TWH, a company owned by Lonny and Lisa Remmers.

27. Wittenmyer and Paul Konapelsky ("**Konapelsky**"), an attorney who represented TWH, New Dimension, and Ananias, both individually and on behalf of TWH, New Dimension, and Ananias, represented to Dillin Investments in June and July 2009 that New Dimension was backed by TWH's 50% share of Ananias, which Konapelsky characterized in an e-mail to Dillin Investments dated July 15, 2009 (the "**July 15, 2009 E-mail**") as a "250 billion dollar asset fund."

28. Wittenmyer also represented that both Lonny Remmers and TWH had substantial asset holdings and financial wherewithal.

29. Further, to induce Dillin Investments to invest the Dillin Funds, Konapelsky's July 15, 2009 E-mail offered to pledge to Dillin Investments a security interest in TWH's holdings of Ananias as collateral to secure the repayment of the Dillin Funds and the "profit participation." In that e-mail, Konapelsky described the Ananias fund as the "real backstop" to assure repayment of the Dillin Funds and the "profit participation."

30. The July 15, 2009 E-mail also described an alleged 2% management fee, purportedly payable to TWH by Ananias from "existing funds" invested in Ananias, as additional collateral for the loan.

b. New Dimension and Ananias's Operations and Legitimacy

31. Defendants made representations to Dillin Investments that New Dimension and Ananias were imminently ready to begin operations, had a firm business plan, and had investors prepared to invest money and/or assets in New Dimension.

32. On multiple occasions throughout the negotiations, Defendants, on behalf of New Dimension and TWH, made oral and written representations to Dillin Investments that both New Dimension, TWH and Ananias were valid investment vehicles, with an existing or ready source of investors, assets and/or income.

33. In a July 27, 2009 e-mail to counsel for Dillin Investments from Konapelsky, on behalf of TWH and New Dimension, Konapelsky claimed that Ananias had "10000 [membership] units authorized," of which 5,000 were issued to members—including 2,500 units to TWH.

34. In a July 26, 2009 e-mail to Dillin Investments (the "**July 26, 2009 E-mail**"), Wittenmyer and Aller provided Dillin Investments and Dillin with several documents, including overviews of New Dimension and Ananias that broadly described the purpose of the entities, and a purported Private Placement Memorandum ("**PPM**") for Ananias that was purported to have been distributed to potential investors. The PPM contained statements proclaiming the nature, existence and purpose of Ananias.

35. In the July 26, 2009 E-mail, Aller and Wittenmyer further represented that Ananias had accumulated sufficient investment assets to meet the threshold spelled out in the PPM that would allow Ananias to "close" and begin operations.

36. Dillin Investments requested to see supporting documentation to confirm the existence of the investment assets that supposedly made up the Ananias fund. In the July 26, 2009 E-mail, and in other contemporaneous written and/or verbal communications, Aller and Wittenmyer responded that such documentation could not be produced until after Ananias "closed" and began operations, due to alleged privacy and confidentiality concerns.

37. Similar representations were made with respect to New Dimension. In the July 15, 2009 E-Mail, Konapelsky, individually and on behalf of New Dimension, TWH, and Ananias, described New Dimension as "a single purpose entity set up by Greenberg Traurig LLP to process all fees and proceeds from the many structured financing transactions with Trinity World Holdings."

38. Aller and Wittenmyer further elaborated on the nature of New Dimension in the July 26, 2009 E-mail. In that e-mail, Aller and Wittenmyer described New Dimension as being a "client management entity" that "introduces clients to transactions

and shares in the profits from each transaction." The transactions in question were purportedly ventures between the alleged "clients" and Ananias and/or TWH.

c. Use of the Dillin Funds

39. Defendants made further representations to Dillin and Dillin Investments that the Dillin Funds would be used to fund start-up costs for New Dimension.

40. As one example, in the July 26, 2009 E-mail, Aller and Wittenmyer represented to Dillin Investments that the Dillin Funds would be used to "establish" New Dimension, and explained that in the "near term," New Dimension's expenses would largely consist of "administrative transactional" costs and fee payments to transaction "intermediaries".

## C. Dillin Invests The Dillin Funds

41. As the result of the representations made by Defendants as detailed herein, on or about July 27, 2009, Dillin Investments and Dillin agreed to invest the Dillin Funds.

42. It would turn out that all of the above representations, upon which Dillin Investments and Dillin reasonably relied, were false and materially misleading.

43. The vehicle through which Dillin Investments and Dillin invested the Dillin Funds was that certain *Collateralized Promissory Note* (the "**Note**") dated July 27, 2009, executed and delivered to Larry Dillin on behalf of Dillin Investments by Mark Aller on behalf of New Dimension, and by Lisa Remmers on behalf of TWH. A true, accurate, and complete copy of the Note is attached hereto as **Exhibit A** and is incorporated herein by reference.

44. The basic terms of the Note are summarized below as follows:

a. Dillin Investments would lend the Dillin Funds ($2,000,000) to New Dimension and TWH, to be repaid on or before July 27, 2010, with interest at a rate of 12% per annum;

b. New Dimension and TWH further agreed to pay to Dillin Investments a guaranteed "profit participation payment" of $8,000,000 within one year;

c. New Dimension and TWH represented and warranted that the statements made by them, or on their behalf, regarding their financial condition were true, complete and correct.

45. Contemporaneously with the execution of the Note, on or about July 27, 2009, Mark Aller on behalf of New Dimension and Lisa Remmers on behalf of TWH executed and delivered in favor of Larry Dillin, on behalf of Dillin Investments, that certain *Pledge and Security Agreement* (the "**Security Agreement**"), pursuant to which TWH pledged, as collateral on the Note, 500 ownership units in Ananias, which allegedly represented 20% of TWH's membership interest in Ananias. A true, accurate, and complete copy of the Security Agreement is attached hereto as **Exhibit B** and is incorporated herein by reference.

46. In the Security Agreement, New Dimension and TWH made warranties and references throughout as to TWH's good and marketable title to its ownership interest in Ananias—a valid, subsisting limited liability company qualified to do business—and gave Dillin Investments the right to foreclose on this interest in the event of default for all amounts owed, including principal, interest, costs of collection and the alleged "profit participation."

47. On or about July 27, 2009, Dillin Investments caused $2,000,000 to be paid to New Dimension and TWH pursuant to an electronic funds transfer made at the direction of Konapelsky.

48. As stated above, Dillin Investments was in a liquidity crisis. Thus, in order to obtain the liquidity to advance the Dillin Funds pursuant to the terms of the Note, Dillin Investments borrowed the money from Voelker, who was one of Dillin's business partners in an entity called Levis Crossings, LLC ("**Levis Crossings**"), and pledged Dillin's membership interest in Levis Commons Hotel, LLC as collateral.

### D. New Dimension and TWH Fail To Repay The Note, All The While Continuing To Give Dillin And Dillin Investments Assurances That His Position Is Secure

49. After the Note and Security Agreement were executed, Dillin became concerned that no funds had yet been dispersed to Dillin Investments under the terms of the Note. After several inquiries, Dillin and Dillin Investments Chief Financial Officer Bob Gummow requested a meeting with representatives of New Dimension, and specifically requested to meet Lonny Remmers.

50. New Dimension agreed to meet and stated that Lonny Remmers would be available. As a result, Dillin and Gummow scheduled a trip to California in or about September-October 2009.

51. While in California, Aller, Wittenmyer, and/or other Defendants presented to Dillin and Gummow several boxes of documents involving projects that were ostensibly being considered for investment by partners of New Dimension. These investments were primarily real estate opportunities across several states.

52. After viewing the documents, Dillin and Gummow reiterated their request for information regarding the identity of investors or assets in Ananias, and were assured that while that information was "confidential" at the time, it would be disclosed once the fund began operations.

53. Throughout their stay in California, Dillin and Gummow were told that they would meet with Lonny Remmers. Prior to each meeting, however, Remmers would unexpectedly cancel. They returned home without ever meeting him.

54. In October 2009, Dillin again followed up with Defendants due to the fact that he had not yet received a monthly payment on the Note. New Dimension agreed to make a $125,000 payment to Dillin Investments, which it did on or about October 24, 2009. It was the only payment Dillin Investments would ever receive under the Note.

55. In the months that followed, Defendants repeatedly gave Dillin and Dillin Investments assurances that New Dimension and Ananias would soon be operational and gave various excuses for why progress had not been made.

56. On June 27, 2010, the Note matured without repayment. Two days later, in a letter from counsel for Dillin Investments, Dillin Investments gave notice to New Dimension and TWH that they were in default, and demanded immediate payment of all amounts due, including interest and the "profit participation."

57. By virtue of New Dimension and TWH's failure to repay the Note, Dillin Investments lacked the funds to re-pay the Levis Crossings Note and went into default on that obligation. In 2011, the holder of the Levis Crossings Note foreclosed on Dillin Investment's pledged membership interest in Levis Commons Hotel, LLC.

**E. The Fraud**

58. At all relevant times, New Dimension was intended by Defendants to be a fraudulent enterprise to defraud investors, including Dillin and Dillin Investments.

59. Each individual had a specific role to play in the fraudulent enterprise. Wittenmyer's role was, at least, to solicit money from "investors" for New Dimension—in this case, Dillin. Aller's role was, at least, to manage the books and records so as to maintain the appearance of legitimacy for New Dimension and its relationship with TWH and Ananias. Lonny Remmers' role was, at least, to pose as an individual that had the ability to create profit from New Dimension and provide security for Dillin Investments' "investment." Lisa Remmers' role was, at least, to insulate TWH from Lonny Remmers, and to pose as the independent manager of an entity with billions of dollars in assets that could provide collateral under the Note.

60. At all relevant times, Ananias did not hold assets of any material value and had no active clients. Indeed, at no time has Ananias been a functioning investment fund. Thus, contrary to Defendants' representations, Ananias was not a "$250 billion" asset fund—nor, for that matter, did it own any material assets at all.

61. Any "units" of Ananias held by TWH, if they existed, had little or no value. The so-called "backstop" that Defendants represented would secure the Note and to assure Dillin Investments the payment of the obligations owed to it was, therefore, a complete fabrication.

62. New Dimension was designed to receive, and did receive, little or nothing in the way of fees and proceeds from "structured financing transactions" with TWH.

63. Contrary to the representations made by Defendants as described herein, the Ananias documents—including the PPM—were never distributed to investors and, in fact, were merely working drafts that had not been, and never were, finalized.

64. Contrary to the representations made by Defendants as described herein, Ananias, TWH and New Dimension have never possessed valuable assets, nor has any of these entities existed as a viable investment or income producing entity of any kind. These entities were created solely in furtherance of the fraudulent scheme detailed herein.

65. The Dillin Funds were not used to set up new funds or to pay administrative fees and transaction costs for New Dimension. Of the $2,000,000 in Dillin Funds invested, the Defendants can only account for the whereabouts of $500,000—and those funds were, according to New Dimension, "invested" in a "prime bank" investment scam, detailed in SEC v. Francis E. Wilde, et al., Case No. SACV 11-315 DOC (AJWx ) (C.D. Cal.), and were purportedly lost in full.

66. According to Wittenmyer, this use of the Dillin Funds was the result of a "tip" from Lonny Remmers.

67. Upon information and belief, the remaining $1.5 million of the Dillin Funds were misappropriated by Wittenmyer, Aller, Lonny Remmers, and/or Lisa Remmers and converted to their own use.

**F. "Pastor" Lonny Remmers**

68. Lonny Remmers, a self proclaimed "Pastor," has been convicted of operating criminal scams remarkably similar to the fraudulent scheme alleged herein back in the 1990s.

69. In 1995, the Federal Trade Commission brought suit against, among other parties, PAL Financial Services, Inc., Media Management, Inc., and Lonny Remmers, as president of these two entities. See FTC v. PAL Financial Services, Inc., Media Management, Inc., SACV-95-473 (C.D. Cal.). In that case, Remmers allegedly engaged in a fraudulent scheme to attract consumers to invest in his a plan to distribute Direct Broadcast Satellite (DBS) television programming (the "**DBS Scam**").

70. The defendants, including Lonny Remmers, settled with the FTC for over $700,000. Lonny Remmers was required to post—for 10 years—a performance bond in the amount of $150,000 for the benefit of consumers who may be injured if he should engage in future fraudulent activities.

71. In charges filed in January 1998, the Government alleged that between January 19, 1996, and April 30, 1996, Remmers committed criminal contempt by violating the terms of the consent decree in the DBS Scam case by failing to post his performance bond and operating a fraudulent investment telemarketing scam under a new name—Dimension Capital Group ("**Old Dimension**").

72. The similarities between Old Dimension and New Dimension go beyond their titles. Through Old Dimension, Remmers allegedly attracted investors by offering "investments" in promissory notes backed by U.S. Treasury Bills with a return of at least 12 percent annually, the same rate of return on principle under the Note. As was the case with Ananias and New Dimension, there actually were no Treasury bills to back up the notes, and investors in Old Dimension who purchased the promissory notes lost all of the $4.5 million in principal they had invested.

73. Lonny Remmers pled guilty to the contempt charges and was sentenced to 46 months in prison and three years supervised release.

## G. Fifth Third Is Assigned Dillin And Dillin Investments' Claims

74. Fifth Third holds a valid assignment and duly perfected security interest in, and to, the Note and all claims, contract rights, or choses in action in any way related to the Note.

75. On or about April 12, 2010, to secure the repayment of certain commercial loan indebtedness due to Fifth Third, Dillin Investments executed and delivered to Fifth Third that certain *Assignment and Security Agreement* (the "**2010 Assignment**"), pursuant to which Dillin Investments granted a security interest in favor of Fifth Third for the Note, and indorsed and assigned the Note to Fifth Third. A true, accurate, and complete copy of the 2010 Assignment is attached hereto as **Exhibit C** and is incorporated herein by reference.

76. Fifth Third perfected its security interest and lien in the Note by filing a financing statement with the Ohio Secretary of State on April 23, 2010, which was received for record as File Number OH00141674037 of the UCC Records of the State of Ohio. A true, accurate, and complete copy of the financing statement is attached hereto as **Exhibit D** and is incorporated herein by reference.

77. Pursuant to the 2010 Assignment, Fifth Third is the owner and holder of the Note and has full legal rights to enforce the rights and obligations pursuant thereto.

78. To further secure the payment and performance of certain commercial loan obligations due to Fifth Third, on or about October 28, 2011, Dillin, Dillin Investments, and Levis Crossings executed and delivered to Fifth Third that certain

*Assignment, Pledge, and Security Agreement* (the "**2011 Assignment**"), pursuant to which Dillin, Dillin Investments, and Levis Crossings assigned, set over, and granted a security interest in and to Fifth Third for all claims, rights of action, commercial tort claims, and other liabilities Defendants may have to Dillin, Dillin Investments, and/or Levis Crossings by virtue of the Note and the conduct described in this Complaint. A true, accurate, and complete copy of the 2011 Assignment is attached hereto as **Exhibit E** and is incorporated herein by reference.

79. By virtue of the 2010 Assignment and 2011 Assignment, Fifth Third is the assignee of all claims that Dillin Investments, Dillin, and/or Levis Crossings have against Defendants in this action, has the full legal right to assert those claims as assignee of such parties, and is therefore a real party in interest with standing to pursue this Complaint.

**COUNT I**
**Breach of the Note**
**(Against New Dimension and TWH)**

80. The allegations contained in all preceding Paragraphs are incorporated herein by reference.

81. Pursuant to the Note, Dillin Investments lent New Dimension and TWH the principal sum of $2,000,000.

82. New Dimension and TWH are in default under the terms and conditions of the Note by, among other things, failing to make required payments of principal and interest when due, and failing to repay the Note in its entirety by July 27, 2010.

83. By virtue of New Dimension and TWH's defaults under the terms and conditions of the Note, Dillin Investments elected to accelerate and declare all unrepaid

principal, accrued and unpaid interest, late and other charges, plus the full "profit participation" payment, immediately due and owing.

84. By virtue of New Dimension and TWH's defaults under the terms and conditions of the Note, there is due and owing to Fifth Third, as assignee of Dillin Investments, the sum of $10,533,333.33, including $2,000,000 in principal, $533,333.33 in accrued and unpaid interest to and including September 15, 2011, and $8,000,000 in "profit participation" payments, plus interest accruing thereafter on the unpaid principal balance at a rate of 12.00% per annum, plus late fees and all costs and attorneys fees incurred by Fifth Third to collect outstanding amounts.

## COUNT II
## Securities Fraud – Violation of § 10(b) of the Securities Exchange Act of 1934 and SEC Rule 10b-5
## (Against All Defendants)

85. The allegations contained in all preceding Paragraphs are incorporated herein by reference.

86. The Note constitutes a "security" within the meaning of the Securities Exchange Act of 1934, as amended, 15 U.S.C. § 78c(a)(10), because it is both a note evidencing indebtedness and, by virtue of the Note's grant to Dillin Investments of a guaranteed "profit participation" in New Dimension, constitutes an investment contract.

87. In connection with the purchase or sale of a security, to wit, the Note, and to induce Dillin Investments to advance the Note and Dillin Funds, Defendants made materially false and misleading statements of material fact and further omitted to state material facts necessary to make the statements they did make not misleading, in light of the circumstances under which they were made, during the time period beginning in May 2009 and continuing through the date of this Complaint (the "**Relevant Time Period**").

88. The materially false and misleading statements, and omissions, of material facts are more fully set forth in Paragraphs 14 to 73 of this Complaint, and generally consist of the following (collectively, the "**False and Misleading Statements**"):

a. Defendants Aller, Wittenmyer, New Dimension, TWH, and Ananias falsely represented that Ananias: (i) was a $250 billion asset fund with sufficient value, as of July 27, 2009, to serve as collateral for the repayment of the Note when, in fact, Ananias was worthless; and (ii) had sufficient investors and invested assets to "close" and begin operations shortly after the execution of the Note when, in fact, Ananias had no investors or invested assets, and was not an operational investment vehicle.

b. Defendants Aller, Wittenmyer, New Dimension, TWH and Ananias falsely represented that TWH held assets apart from its fictional holdings in Ananias and that TWH and Lonny Remmers had substantial asset holdings and financial wherewithal to support the New Dimension and Ananias projects;

c. Defendants Aller, Wittenmyer, New Dimension, TWH, Ananias, Lisa Remmers, and TVA falsely represented that the documents supplied to Dillin Investments and Dillin in July 2009 including, without limitation, the PPM for Ananias, were accurate and were circulated to investors—when, in fact, these documents were mere drafts that were incomplete, inaccurate, and were not circulated to investors.

d. Defendants Aller, Wittenmyer, New Dimension, TWH, and Ananias falsely represented that New Dimension received management fees from "structured" transactions with TWH when, in fact, New Dimension had never received any such fees and had no plans to receive them in the future;

e. Defendants Aller, Wittenmyer, New Dimension, TWH, and Ananias falsely represented that the Dillin Funds would be used to fund management and administrative expenses of New Dimension when, in fact, Defendants did not use the Dillin Funds in that manner and, when they made said representations, had no intent of using the Dillin Funds in that manner;

f. Defendants falsely represented that New Dimension, TWH, and Ananias were legitimate, bona fide business entities and investment vehicles when, in fact, they were fraudulent "shell" companies that never transacted business and that Defendants never intended to transact business;

g. Defendants falsely represented that the collateral offered to Dillin Investments to secure repayment of the Note had value when, in fact, such collateral was worthless; and

h. Defendants Wittenmyer, Aller, TWH, New Dimension, and Ananias falsely represented that the investment documents produced to Dillin Investments during Dillin and Gummow's Fall 2009 trip to California were bona fide documents evidencing assets that were invested in Ananias when, in fact, they were not.

89. The False and Misleading Statements were false and misleading when made. At all relevant times, Defendants knew, or should have known, that the False and Misleading Statements were false and misleading.

90. Defendants made the False and Misleading Statements knowingly or with a reckless disregard for the truth thereof, and with the intent to deceive or defraud Dillin Investments and Dillin. To the extent that the False and Misleading Statements incorporate omissions of material facts, such omissions were made by Defendants despite Defendants having a duty to Dillin Investments and Dillin to disclose the truth.

91. Defendants engaged in the fraudulent scheme described herein by means of the mails, e-mail, telephone, or other device or instrumentality of interstate commerce.

92. Dillin Investments and Dillin justifiably and reasonably relied, to their detriment, on the False and Misleading Statements advanced by Defendants.

93. During the Relevant Time Period, the Defendants, as specified above, materially misled Dillin Investments making false and misleading statements and omitting to disclose material facts necessary to make these Defendants' statements, as set forth herein, not false and misleading. Said statements and omissions were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about New Dimension, TWH and Ananias, as alleged herein.

94. Dillin Investments, Dillin, and Plaintiff did not discover, and could not have reasonably discovered through the exercise of due diligence, the facts underlying the fraudulent scheme described herein until, at the earliest, the Spring of 2010.

95. The material misrepresentations and omissions particularized in this Complaint during the Relevant Time Period directly or indirectly, and proximately

caused or were a substantial contributing cause of severe damages and harm suffered by Dillin and Dillin Investments including, without limitation, the complete loss of the Dillin Funds investment, the loss of Dillin's interest in Levis Commons Hotel, LLC, the loss of the benefit of the bargain Dillin Investments entered into with TWH and New Dimension in the Note, all in an amount to be determined at trial but believed to exceed $10,000,000.

**COUNT III**
**Securities Fraud – Violation of § 17(a) of the Securities Act of 1933**
**(Against All Defendants)**

96. The allegations contained in all preceding Paragraphs are incorporated herein by reference.

97. The Note constitutes a "security" as defined by the Securities Act of 1933, codified at 15 U.S.C. §§ 77a *et seq.*. Dillin Investments, by means of the transactions detailed above, purchased securities from Defendants.

98. Throughout the Relevant Time Period, Defendants made, disseminated and/or approved the making or dissemination of the materially false and misleading statements of fact, specified above in paragraphs 14 through 73 and summarized in paragraph 88, to Dillin Investments and Dillin, which statements the Defendants knew or recklessly disregarded were false and misleading statements of material fact, and the Defendants further omitted to state material facts necessary to make the statements they did make not misleading, in light of the circumstances under which they were made, not misleading.

99. Dillin and Dillin Investments reasonably relied upon the materially false and misleading statements of fact, specified above in paragraphs 14 through 73 and summarized in paragraph 88.

100. The Defendants, as specified above: (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material facts and/or omitted to state material facts necessary to make the statements they did make not misleading; and (c) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon Dillin Investments as to the true nature, financial condition and business operations of TWH and New Dimension, the parties to and subject of the investment contract executed by Dillin Investments, as well as Ananias, the ownership "units" of which TWH pledged as security for the Note.

101. During the Relevant Time Period, the Defendants, as specified above, materially misled Dillin Investments and Dillin making false and misleading statements and omitting to disclose material facts necessary to make these Defendants' statements, as set forth herein, not false and misleading. Said statements and omissions were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about New Dimension, TWH and Ananias, as alleged herein.

102. The material misrepresentations and omissions particularized in this Complaint during the Relevant Time Period directly or indirectly, and proximately caused or were a substantial contributing cause of severe damages and harm suffered by Dillin and Dillin Investments including, without limitation, the complete loss of the Dillin Funds investment, the loss of Dillin's interest in Levis Commons Hotel, LLC, the loss of the benefit of the bargain Dillin Investments entered into with TWH and New Dimension in the Note, all in an amount to be determined at trial but believed to exceed $10,000,000.

**COUNT IV**
**Fraud and Deceit**
**(Against All Defendants)**

103. The allegations contained in all preceding Paragraphs are incorporated herein by reference.

104. When Defendants made the False and Misleading Statements to Dillin Investments and Dillin, they knew them to be false and they made these representations with the intention to deceive and defraud Dillin Investments and to induce Dillin Investments to act in reliance on these representations in the manner alleged above.

105. Dillin Investments, at the time the False and Misleading Statements were made by the Defendants and at the time Dillin Investments took the actions herein alleged, was ignorant of the falsity of Defendants' representations and believed them to be true.

106. In reasonable and justifiable reliance on these representations, Dillin Investments was induced to enter into the execute the Note, the Security Agreement, Levis Crossings Note, the Note and the Security Agreement. Had Dillin Investments and Dillin known the actual facts, they would not have taken such actions.

107. As a direct and proximate result of the fraudulent conduct of Defendants as herein alleged, Dillin Investments has suffered damages, the exact amount of which has not yet been ascertained and will be established according to proof, but which Plaintiff believes is not less than $10 million.

108. The unlawful conduct of Defendants as alleged above was intentional, malicious, despicable, fraudulent conduct performed to deprive Dillin Investments of property or legal rights, so as to justify an award of exemplary and punitive damage.

## COUNT V
## Fraudulent Inducement
## (Against All Defendants)

109. The allegations contained in all preceding Paragraphs are incorporated herein by reference.

110. In connection with Dillin Investments executing the Note, the Security Agreement, and related transactions, Defendants made material representations concerning New Dimension, TWH and Ananias to induce Dillin Investments to enter into the transactions set forth herein.

111. Defendants knew that the representations regarding New Dimension, TWH and Ananias were false at the time they were made and made them with the intent to defraud and deceive Dillin Investments and Dillin to induce them to enter into said transactions, invest the Dillin Funds, and perform their obligations thereunder.

112. Defendants had superior knowledge regarding New Dimension, TWH and Ananias. Dillin Investments, however, at the time these representations were made, was ignorant of the nature of New Dimension, TWH and Ananias and Defendants' misrepresentations relating thereto and could not, in the exercise of reasonable diligence, have discovered Defendants' misrepresentations.

113. In reasonable reliance on Defendants' misrepresentations, Dillin Investments entered into the transactions mentioned herein.

114. Dillin Investments would not have entered into any of the transactions set forth herein if Defendants had disclosed the true nature of New Dimension, TWH and Ananias. Upon information and belief, Defendants knew that Dillin Investments would

not have entered into any of the transactions set forth herein if Defendants had disclosed the true nature of New Dimension, TWH and Ananias.

115. As a direct and proximate result of the fraudulent conduct of Defendants as herein alleged, Dillin Investments has suffered damages, the exact amount of which has not yet been ascertained and will be established according to proof, but which Plaintiff believes is not less than $10 million.

116. The unlawful conduct of Defendants as alleged above was intentional, malicious, despicable, fraudulent conduct performed to deprive Dillin Investments of property or legal rights, so as to justify an award of exemplary and punitive damage.

## COUNT VI
## Promissory Fraud
## (Against All Defendants)

117. The allegations contained in all preceding Paragraphs are incorporated herein by reference.

118. The actions by Defendants in inducing Dillin Investments to enter into the Levis Crossings Note, the Note and the Security Agreement based on Defendants false promises of their intention to perform TWH's and New Dimension's obligations under the Note and the Security Agreement, as more particularly alleged above, constitute intentional promissory fraud.

119. As a proximate result of the fraudulent conduct of the Defendants as herein alleged, Dillin Investments has suffered damages, the exact amount of which has not yet been ascertained and will be established according to proof, but which Plaintiff believes is not less than $10 million.

120. The unlawful conduct of the Defendants as alleged above was intentional, malicious, despicable, fraudulent conduct performed to deprive Dillin Investments of property or legal rights, so as to justify an award of exemplary and punitive damage.

**COUNT VII**
**Negligent Misrepresentation**
**(Against All Defendants)**

121. The allegations contained in all preceding Paragraphs are incorporated herein by reference.

122. When Defendants made the False and Misleading Statements detailed herein to Dillin Investments concerning the nature of New Dimension, TWH and Ananias, and concerning their intention to perform under the Note and Security Agreement, Defendants had no reasonable ground for believing those representations to be true.

123. Defendants made these representations with the intention to induce Dillin Investments to act in reliance on them in the manner alleged above.

124. Dillin Investments, at the time these representations were made by Defendants and at the time Dillin Investments took the actions herein alleged, was ignorant of the falsity of Defendants' representations and believed them to be true.

125. In reasonable and justifiable reliance on these representations, Dillin Investments was induced to enter into the transactions set forth herein. Had Dillin Investments known the actual facts, it would not have taken such actions.

126. As a proximate result of the negligent misrepresentations of Defendants as herein alleged, Dillin Investments has suffered damages, the exact amount of which has

not yet been ascertained and will be established according to proof, but which Plaintiff believes is not less than $10 million.

**COUNT VIII**
**Civil Conspiracy**
**(Against All Defendants)**

127. The allegations contained in all preceding Paragraphs are incorporated herein by reference.

128. In or about June 2009, Defendants knowingly and willfully conspired and agreed among themselves to fraudulently misrepresent the nature of New Dimension, TWH and Ananias in order to, as set forth above, induce Dillin Investments and Dillin to enter into the subject transactions and invest the Dillin Funds.

129. Defendants did the acts and things herein alleged pursuant to, and furtherance of, the conspiracy and above-alleged agreement.

130. Defendants furthered the conspiracy by cooperation with or lent aid and encouragement to or ratified and adopted the acts of each of the other Defendants in that they were all aware of the true nature of New Dimension, TWH and Ananias and the misrepresentations made to Dillin Investments concerning these entities.

131. Dillin Investments are informed and believe and thereon allege that the last overt act in pursuance of the above-descried conspiracy occurred on or about July 27, 2009, on which date Defendants misrepresented to Dillin Investments the true nature of New Dimension, TWH and Ananias, thereby inducing Dillin Investments to enter into and complete the subject transactions.

132. As a proximate result of the wrongful acts herein alleged, Dillin Investments has been generally damaged.

133. The unlawful conduct of the Defendants as alleged above was intentional, malicious, despicable, fraudulent conduct performed to deprive Dillin Investments of property or legal rights, so as to justify an award of exemplary and punitive damage.

**COUNT IX**
**Alter Ego**
**(Against Wittenmyer, Aller, Lonny Remmers, Lisa Remmers, and TVA)**

134. The allegations contained in all preceding Paragraphs are incorporated herein by reference.

135. Upon information and belief, Wittenmyer, Aller, Lonny Remmers, Lisa Remmers, and TVA are, and were at all relevant times, the direct or indirect members, managers, or other equitable owners of Ananias, TWH, and New Dimension (and, together with Ananias and TWH, the "**Shell Companies**").

136. Defendants Wittenmyer, Aller, Lonny Remmers, Lisa Remmers, and TVA created the Shell Companies and held them out to Dillin Investments and Dillin as legitimate business entities when, in fact, they were shams.

137. There is such a unity of interest and ownership between said Defendants and the Shell Companies that the Shell Companies lack a personality or legal interest separate from that of said Defendants.

138. Said Defendants abused the corporate form of the Shell Companies to perpetrate a fraud and/or to accomplish a wrongful and inequitable purpose—to wit, perpetrating the fraudulent investment scheme described herein and inducing Dillin and Dillin Investments to invest the Dillin Funds on the terms set forth in the Note.

139. Because the Shell Companies are, upon information and belief, sham entities that lack assets, it would be inequitable to Plaintiff if the above wrongful acts were treated as acts of the Shell Companies alone.

140. Dillin Investments and Dillin were harmed by the conduct herein described and have suffered, as the direct and proximate result of such harm, damages in an amount to be determined at trial, and that Plaintiff believes exceed $10,000,000.

141. As such, the Court should declare Defendants Wittenmyer, Aller, Lonny Remmers, and Lisa Remmers to be the "alter egos" of the Shell Companies, disregard the corporate form of the Shell Companies, and hold said Defendants personally, jointly, and severally liable to Plaintiff for all sums due and owing to Plaintiff the Note and Security Agreement.

## COUNT X
## Unjust Enrichment
## (Against All Defendants)

142. The allegations contained in all preceding Paragraphs are incorporated herein by reference.

143. Under the Note and as set forth above, Dillin Investments paid Defendants $2 million.

144. By virtue of Defendants' fraudulent conduct, as alleged above, and by not honoring their obligations under the Note and Security Agreement, Defendants, by retaining the Dillin Funds, have been unjustly enriched in an amount to be determined at trial.

**WHEREFORE**, Plaintiff, as assignee of the claims detailed above, demands a trial by jury and prays for judgment as follows:

a. On Count I, judgment against New Dimension and TWH on the Note in the sum of $10,533,533.33, inclusive of $2,000,000.00 in outstanding principal, $533,333.33 in accrued and unpaid interest through and including September 15, 2011, $8,000,000.00 in "profit participation" payments, plus interest accruing thereafter on the unpaid principal balance at the rate of 12.00% per annum, plus attorneys' fees and costs incurred by Plaintiff to collect outstanding amounts;

b. On Counts IX and X, judgment against all Defendants on the Note for the sums set forth in subparagraph (a) above;

c. On Counts II through VIII of the Complaint, an award of compensatory and punitive damages against all Defendants, jointly and severally, in an amount to be determined at trial;

d. On Counts II through VIII of the Complaint, an award of trebled damages against all Defendants, jointly and severally, in an amount to be determined at trial;

e. A full accounting of all transactions and activities regarding the Dillin Funds;

f. Against all Defendants for the costs of this action and for reasonable attorneys' fees and litigation expenses incurred by Plaintiff;

g. Pre-judgment and post-judgment interest; and

h. Such other and further relief as this Court may deem just and proper.

Respectfully submitted,

/s/ Nicholas L. White

Brett A. Wall (0070277)
Patrick T. Lewis (0078314)
Nicholas L. White (0079956)
BAKER & HOSTETLER LLP
PNC Center
1900 East Ninth Street, Suite 3200
Cleveland, Ohio 44114-3485
216.621.0200 / Fax 216.696.0740
bwall@bakerlaw.com
plewis@bakerlaw.com
nwhite@bakerlaw.com

*Counsel for Plaintiff, Fifth Third Bank.*

**DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury as to all issues so triable.

Respectfully submitted,

/s/ Nicholas L. White

Brett A. Wall (0070277)
Patrick T. Lewis (0078314)
Nicholas L. White (0079956)
BAKER & HOSTETLER LLP

*Counsel for Plaintiff, Fifth Third Bank.*

503603802